No.13-5100, 13-5102

===============

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

===============

AUDREY SWANN

Plaintiff - Appellant,

v.

OFFICE OF THE ARCHITECT OF THE CAPITOL,

Defendant - Appellee.

On Appeal from the United States District Court
for the District of Columbia

=====================================

**BRIEF OF PETITIONER AUDREY SWANN**

Jeffrey H. Leib
5104 34th Street, N.W.
Washington, D. C. 20008
(202) 362 - 0682
Attorney for Appellant

February 3,  2014

## CERTIFICATE AS TO PARTIES, RULINGS AND RELATED CASES

Pursuant to Federal Rule of Appellate Procedure 28 and Circuit Rule 28, appellant states as follows:

### A.  Parties

Audrey Swann is the Plaintiff/Appellant on appeal and in the herein brief.

The Architect of the Capitol is the Defendant/Appellee on appeal and  in the herein brief

### B.  Rulings Under Review

The respective rulings under review are the February 8, 2013, Order dismissing the  underlying respective cases in their entirety:  Civil Action No.: 1:09-cv-001586(RLW) and Civil Action NO. 1:11-cv-00419(RLW).

### C.  Related Cases

The are no related cases in the Court of Appeals.

-i-

# TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................................ii

TABLE OF AUTHORITIES.........................................................................................iv

BRIEF OF APPELLANT AUDREY SWANN...........................................................1

I.      STATEMENT OF JURISDICTION..................................................................1

II      STATEMENT OF THE ISSUES........................................................................2

III     STATUTES.............................................................................................................3

        A. DISCRIMINATION PURSUANT TO 2 U.S.C. 1311(a)(1) OF THE CAA..................3

        B. RETALIATION PURSUANT TO 2 U.S.C. 1317(a) OF THE CAA............................4

        C. DISCRIMINATION PURSUANT TO 42 U.S.C. 2000e-2, TITLE VII........................4

        D. RETALIATION PURSUANT TO 42 U.S.C. 2000e-3, TITLE VII.............................4

IV      STATEMENT OF FACTS....................................................................................5

        A. FACTUAL BACKGROUND IN *SWANN I*.............................................................5

        B. FACTUAL BACKGROUND IN *SWANN II*...........................................................9

V       SUMMARY OF ARGUMENT.........................................................................14

        A. COUNTS I AND II IN *SWANN I* AND THE EXHAUSTION ISSUE.......................14

        B. "EMPLOYER CONDUCT" AND THE CAA..........................................................15

VI      ARGUMENT........................................................................................................19

        A. STANDARD OF REVIEW..................................................................................19

        B. COUNTS I AND II IN *SWANN I*......................................................................19

        C. COUNTS I AND II IN *SWANN I* AND THE EXHAUSTION ISSUE.......................25

        D. THE "EMPLOYER CONDUCT" ARGUMENT; AND,
        THE DECISIONS OF THE DISTRICT COURTS............................................................28

E. THE "EMPLOYER CONDUCT" ARGUMENT; AND, THE CAA AND TITLE VII ARE NOT *IN PARI MATERIA*............................................33

1. THE PRINCIPLE OF *IN PARI MATERIA* AND CONFLICTING PRINCIPLES OF STATUTORY CONSTRUCTION..........................33

2. DISCRIMINATION BASED ON SEX AND GENDER UNDER THE CAA; AND, GENERAL PRINCIPLES OF STATUTORY CONSTRUCTION.......................36

F. DISCRIMINATION PURSUANT TO THE CAA AND TITLE VII...........................40

G. RETALIATION PURSUANT TO THE CAA AND TITLE VII................................42

H. THE EFFECT OF THE UNIFORM REMEDY FOR RETALIATION....................47

I. HOSTILE WORK ENVIRONMENT CLAIMS UNDER THE CAA..................54

CONCLUSION..................................................................................................................60

CERTIFICATE OF COMPLIANCE.......................................................................62

CERTIFICATE OF SERVICE.................................................................................62

## TABLE OF AUTHORITIES

<u>CASE LAW</u>

*Advertiser's Mfg. Co.*, 280 N.L.R.B. 1185, 1190-91 (1986), enforced,823 F.2d 1086
(7th Cir. 1987)...................................................................................................54

*Akins* v. *United States*, 194 Ct. Cl. 477, 439 F.2d 175, 177 (1971)...............................53

*Andrews* v. *City of Philadelphia,* 895 F.2d 1469(3d Cir. 19909).............................54, 55

*Baird* v. *Gotbaum*, 662 F.3d 1246, 1248(D.C.Cir. 2011)............................................43

*Bowsher* v. *Merck & Co.*, 460 U.S. 824, 103 S.C..1587(1983)...............................18, 32

*Branch* v. *Smith*, 538 U.S. 254(2003).................................................................18, 32

*Britton* v. *Office of the Architect of the Capitol,* Case No. 02-AC-20(CV, RP),
(May 23, 2005), *"Britton"* ........................................16, 30, 40, 42, 43, 44, 54, 55

*Brown* v. *City of Tucson*, 336 F.3d 1181, 1191-92 (9th Cir. 2003)................................46

*Burlington Northern & Sante Fe Railway Co.* v. *White,* 548 U.S. 53(2006)................................60

*Burns* v. *Alcala* , 420 U.S. 575, 580-581(1975)................................................................37

*Callanan* v. *United States*, 364 U.S. 587, 594-95(1961)..................................................38

*Caminetti* v. *United States*, 242 U.S. 470, 485(1917)......................................................38

*Commissioner* v. *Bilder*, 369 U.S. 499, 503, 8 L. Ed. 2d 65, 82 S. Ct. 881 (1962).........................53

*Connecticut National Bank* v. *Germain*, 503 U.S. 249, 253–254, 112 S.Ct. 1146,
117 L.Ed.2d 391(1992)................................................................................38

*Covad Communications Co.* v. *Bell Atlantic Corp.*, 398 F.3d 666, 670-71(D.C.Cir. 2005)...........19

*Croixland Properties Ltd.* v. *Corcoran*, 174 F.3d 213, 215(D.C.Cir. 1999)....................................19

*Culver* v. *Office Supply Service, Office of the Chief Administrative Officer,*
*United States House of Representatives*, Case No. 96-AC-55(AG, CV, FM)(April, 1998) ............40

*District of Columbia Nat'l Bank* v. *District of Columbia*, 121 U.S.App.D.C. 196, 198,
348 F.2d 808, 810 (D.C.Cir. 1965)...................................................................39

*Duncan* v. *Office of the Architect of the Capitol*, Case No. 02-AC-59(RP)
(September, 2006)..................................................................................................40

*Duncan* v. *Walker*, 533 U.S. 167(2001)..............................................................48

*Dunn* v. *Commodity Futures Trading Comm'n*, 519 U.S. 465, 472, 117 S.Ct. 913,
137 L.Ed.2d 93(1997)...........................................................................................48

*Edgar L. Landen T/A Speed Mail Serv.*, 251 N.L.R.B. 476, 477 (1980).........................50

*F & R Meat Co.*, 296 N.L.R.B. 759, 767 (1989)....................................................51

*Fanning* v. *Gregoire*, 57 U.S. 524, 528(1853).....................................................33

*Federal Express Corporation* v. *Holowecki*, 128 S.,Ct. 1147(2008)..............................29

*Feldkamp Enters., Inc.*, 323 N.L.R.B. No. 206, 1997 WL 394448, at *51-54
(July 11, 1997)................................................................................................50, 51

*Fort Smith & Western R.R. Co.* v. *Mills*, 253 U.S. 206, 208, 64 L. Ed. 862,
40 S. Ct. 526 (1920)..............................................................................................53

*Gage* v. *Office of the Architect of the Capitol*, Case No. 00-AC-21(CV)(November, 2001)...........40

*General Dynamics Land Systems, Inc.*, v. *Cline*, 540 U.S. 581, 586-587,
124 S.Ct.1236(2004)..............................................................................................29

*Gibson* v. *Missouri Pac. R.R. Co.*, 441 F.2d 784, 787 (5th Cir.), *cert. denied*,
404 U.S. 855, 30 L. Ed. 2d 96, 92 S. Ct. 102 (1971).......................................................53

*Goodman Inv. Co.*, 292 N.L.R.B. 340, 340, 349-50.................................................50

*Harris* v. *Forklift Systems, Inc.*, 510 U. S. 17, 21(1993)........................................55

*House Calls, Inc.*, 304 N.L.R.B. 311, 312-13 (1991)...............................................50

*Hudson Distributors* v. *Eli Lilly*, 377 U.S. 386, 391-92, 12 L. Ed. 2d 394,
84 S. Ct. 1273 (1964)............................................................................................52

*International Union, United Auto., Aerospace and Agr. Implement Workers of America*
*(UAW)* v. *N.L.R.B.*, 459 F.2d 1329(D.C.Cir. 1972)................................................26

*Landreth Timber Co.* v. *Landreth*, 471 U.S., 681, 685()1985)....................................37

*Latimer* v. *Sears Roebuck & Co.*, 285 F.2d 152, 157 (5th Cir. 1960).............................5

*Leatherman* v. *Tarrant Count Narcotics Intelligence and Coordination Unit*,
507 U.S. 163, 164(1993)........................................................................19

*Louisiana Wholesale Drug Co., Inc.* v. *Biovail Corp.*, 437 F. Supp.2d 79,
2006 WL 1722564 (D.D.C.)....................................................................28

*McDonnell Douglas Corp.* v. *Green*, 411 U.S. 792 (1973)..................................40

*Mathews* v. *CIR*, 907 F.2d 1173(D.C.Cir. 1990)...........................................28

*Meritor Savings Bank* v. *Vinson,* 477 U.S. 57, 64-67(1986).............................57

*Microimage Display Div. of Xidex Corp.*, 297 N.L.R.B. 110, 111,enforced,
924 F.2d 245 (D.C. Cir. 1991)................................................................49

*Mid-South Bottling Co.*, 287 N.L.R.B. 1333, 1342-43 (1988),enforced,
876 F.2d 458 (5th Cir. 1989)....................................................................5

*Montclair* v. *Ramsdell*, 107 U.S. 2147, 1521, 2 S.Ct. 391, 27 L.Ed. 431(1883)......................48, 49

*Morongell* v. *Miami-Dave Country*, 2008 WL 4938421 at *5(S.D.Fla. 2008)...................28

*Morton* v. *Mancari*, 417 U.S. 535, 551(1974)...........................................31

*Mountain Side Mobile Estates P'ship* v. *Sec'y of HUD*, 56 F.3d 1243, 1251(10th Cir. 1995)......23

*Nat'l. Rifle Ass'n. of Am., Inc.*, v. *Reno*, 216 F.3d 122, 127(D.C.Cir. 2000)...................37

*NLRB* v. *Lion Oil Co., supra* note 53, 352 U.S. at 290-92......................................53

*National Railroad Passenger Corporation* v. *Morgan*, 536 U.S. 101, 116, 122 S.Ct. 2061,
2074(2002)..........................................................................................55

*Natural Resources Defense Council* v. *Reilly*, 983 F.2d 259(D.C. Cir. 1993)............15, 29

*Palmer* v. *United States*, 794 F.2d 534, 538(9th Cir. 1986)................................23

*Pardo–Kronemann* v. *Donovan*, 601 F.3d 599, 607 (D.C.Cir.2010).........................60

*Perrin* v. *United States*, 444 U.S. 37, 42(1979).......................................18, 32, 37

*Pilot Life Ins. Co.* v. *Dedeaux*, 481 U.S. 41, 51, 107 S.Ct. 1549, 1554-55)(1987)............................48

*Posadas* v. *National City Bank*, 296 U.S. 497, 503(1936)..........................................................18, 32

*Ramapo Bank*  v. *Camp*, 425 F.2d 333, 346 (3d Cir.), cert. denied, 400 U.S. 828,
27 L. Ed. 2d 58, 91 S. Ct. 57 (1970).................................................................................52

*Raniola* v. *Bratton*, 243 F.3d 610(2nd Cir. 2001).................................................................54, 55

*Rattigan* v. *Holder*,  604 F.Supp.2d 33, 52( D.C.D.C. 2011).................................................60

*Reeves* v. *Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)...........................................40

*Reynolds* v. *United States*, 98 U.S. (8 Otto) 145(1878).................................................................26

*Robinson* v. *Metro-North commuter R.R. Co*, 267 F.3d 147, 160(2d Cir. 2001)...........................20

*Rochon* v. *Gonzales*, 438 F.3d 12121(D.C.Cir. 2006)................................................................19

*Rollins* v. *Office of the Clerk of the House of Representatives*,
Case No. 03-HS-105(CV,AG) (December, 2004).....................................................................40

*Roschen* v. *Ward*, 279 U.S. 337, 339, 73 L. Ed. 722, 49 S. Ct. 336 (1928).....................................52

*Rubin* v. *United States*, 449 U.S. 424, 430(1981).......................................................................38

*St. Mary's Honor Ctr.* v. *Hicks*, 509 U.S. 502 (1993)...................................................................40

*Sandoval* v. *City of Boulder,* 388 F.3d 1312, 1326(10th Cir. 2004)...............................................23

*Sands Motel*, 280 N.L.R.B. 132, 141 (1986)..........................................................................51

*Schuler* v. *United States*, 617 F.2d 604, 608(D.C.Cir. 1979).........................................................19

*Sea-Land Serv., Inc.* v. *FMC*, 131 U.S.App.D.C. 246, 248-49, 404 F.2d 824,
826-27 (D.C.Cir.1968)....................................................................................................39

*Solomon* v. *Office of the Architect of the Capitol,* Case No. 02-AC-62(RP),
December 7, 2005), "*Solomon*"...........................................16, 30, 40, 42, 43, 44, 54, 55

*Spaulding* v. *University of Washington,* 740 F.2d 686, 705(9th Cir.),
*cert. denied,* 469 U.S. 1036(1984)........................................................................................23

-vii-

*Stella* v. *Graham-Paige Motors Corp.*, 104 F. Supp. 957, 959 (D.N.Y. 1952)...............52

*Swann v. Office of the Architect of the Capitol,* Case No. 09-0156(RWL),
*Swann I,* ................................................1, 2, 3,5, 6, 7, 8, 14, 19, 25, 26, 56, 61

*Swann v. Office of the Architect of the Capitol,* Case No. 11-00419(RWL),
*Swann II,* ................................................1, 3, 8, 9, 10, 11, 12, 13, 14, 25, , 56, 59, 61

*Swierkiewicz* v. *Sorema N.A.*, 534 U.S. 506, 122 S.Ct. 992(2009)...................48

*TRW Inc.* v. *Anderws*, 534 U.S. 19, 31, 122 S.Ct. 441, 151 L.Ed.2d 151(2001)...............49

*Texas Dep't. of Cmty. Affairs* v. *Burdine*, 450 U.S. 248 (1981)...................40

*United States* v. *Bass*, 404 U.S. 336, 339, 30 L. Ed. 2d 488, 92 S. Ct. 515 (1971)............37

*United States* v. *City & County of San Francisco, supra* note 53, 310 U.S. at 26...........53

*United States* v. *Guaranty Trust Co.*, 280 U.S. 478, 485, 74 L. Ed. 556,
50 S. Ct. 212 (1930)...................53

*United States* v. *Howell*, 11 Wall. 432, 78 U.S. 432, 436(1870)...................37

*United States* v. *Menasche*, 348 U.S. 528, 538-539, 75 S.Ct. 513, 99 L.Ed. 615(1955)............48, 49

*United States* v. *Public Util. Comm'n*, 345 U.S. 295, 312-13, (1953)...................39

*United States* v. *Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241(1989)...................37, 38

*United States* v. *Stewart*, 311 U.S. 60(1940)...................28

*United States* v. *Villanueva-Sotelo*, 515 F.3d 1234(D.C.Cir. 2008)...................37

*Vencor Hosp.-L.A.*, 324 N.L.R.B. No. 35, 1997 WL 471299, at *27-30(Aug. 13, 1997)...........50, 51

*Washington v. Davis,* 426 U.S. 229, 242(1976)...................24

*Williams* v. *General Motors Corp.*, 187 F.3d 553 (6th Cir. 1999)...................54

*Williams* v. *Taylor*, 529 U.S. 362, 404, 120 S.Ct. 1495, 146 L.Ed.2d 389(2000)...................48

*Williamson* v. *Lee Optical Co.*, 348 U.S. 483, 489, 99 L. Ed. 563, 75 S. Ct. 461 (1955)...................52

*Yant* v. *United States,* 588 F.3d 1369, 1372-74(Fed.Cir. 2009)...................23

*Zaimi* v. *United States*, 155 U.S.App.D.C. 66, 71, 476 F.2d 511, 516(D.C.Cir. 1973)........................37

*Zimmerman Plumbing & Heating Co.*, 325 N.L.R.B. No.5, 1997 WL 728268,at \*26, \*30 (Nov. 8, 1997).................................................................................................................50, 51

<u>STATUTES</u>

2  U.S.C. 1301(3) of the Congressional Accountability Act, "CAA" ............................................34

2 U.S.C. 1302 of the CAA..........................................................................................................35

2 U.S.C. 1311(a)(1)  of the CAA...............................................1, 2, 3, 20, 30, 36, 39, 40, 53. 54, 58

2 U.S.C. 1311(b) of the CAA..................................................................................................17, 31

2 U.S.C. 1317(a) of the CAA.....................................1, 2, 3, 6, 30, 42, 43, 44, 45, 46, 47. 53, 54. 58

2 U.S.C. 1317(b) of the CAA...................................................................................................17, 31

2 U.S.C. 1401 of the CAA..............................................................................................................8

2 U.S.C. 1408 of the CAA.............................................................................................................2

2 U.S.C. 1331 of the CAA.............................................................................................................1

2 U.S.C. 1351 of the CAA...........................................................................................................48

2 U.S.C. 1361(f)(1) of the CAA..............................................................................................20, 54

5 U.S.C. Chapter 71...................................................................................................................45

28 U.S.C. 1291...........................................................................................................................2

28 U.S.C. 1331...........................................................................................................................2

29 U.S.C. 158(a)(3)............................................................................................................49,50, 51

29 U.S.C. 215(a)(3), Fair Labor Standards Act ("FLSA")...............................................................45

29 U.S.C. 660, OSH Act.............................................................................................................46

29 U.S.C. 623(d), Age Discrimination in Employment  Act of 1967, "ADEA," .........................29, 41

No.13-5100, 13-5102

================

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

================

AUDREY SWANN

Plaintiff - Appellant,

v.

OFFICE OF THE ARCHITECT OF THE CAPITOL,

Defendant - Appellee.

On Appeal from the United States District Court
for the District of Columbia

======================================

**BRIEF OF PETITIONER AUDREY SWANN**

======================================

## I.  STATEMENT OF JURISDICTION

This is an appeal from the dismissals of the respective Complaints in Amended

Civil Action No. 09-01586(RWL), "*Swann I,*" and Civil Action No. 11-00419(RWL),

"*Swann II,*" pursuant to the February 8, 2013, final Orders of the Honorable Robert

L. Wilkins on said date dismissing with prejudice all claims of  discrimination and

retaliation brought pursuant to 2 U.S.C. 1311(a)(1) and 2 U.S.C. 1317(a) of the

Congressional Accountability Act, "CAA," respectively.

The District Court had subject matter jurisdiction pursuant to 2 U.S.C. 1408 and 28 U.S.C. 1331. Appellant timely filed respective Notice s of Appeal. This Court has subject matter jurisdiction pursuant to 28 U.S.C. 1291.

## II. STATEMENT OF THE ISSUES

1. Whether the Court in *Swann I* erred in dismissing Count I and Count II based on a failure to exhaust administrative remedies.

2. Whether the Court, based on the insufficiency of the "employer conduct" alleged and the Title VII standards for discrimination and retaliation erred in dismissing *Swann I* pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, "FRCP," containing the claims identified hereafter:

(a) Count III, Count IV and Count VI, respectively discrete claims of discrimination based on the social and professional isolation and segregation of the Appellee by job assignment from male employees; and, a hostile work environment claim brought pursuant to 2 U.S.C. 1311(a)(1) of the CAA; and

(b) Count V and Count VI, a discrete claim of retaliation based on violation by Appellee of the Section 2.03(m) process internally processed in Appellee; and, a hostile work environment claim based on contemporaneous participation in federally protected activities pursuant to 2 U.S.C. 1317(a) of the CAA.

2

3.  Whether the Court, based on the insufficiency of the "employer conduct" alleged and the Title VII standards for discrimination and retaliation, erred in dismissing *Swann II* pursuant to Rule 12(b)(6) of the FRCP containing the claims identified hereafter:

(a) Counts I-VIII and Count IX, respectively discrete claims of discrimination and a hostile work environment claim brought pursuant 2 U.S.C. 1311(a)(1) of the CAA;

(b) Counts X-XVII and Count XVIII, respectively discrete claims of retaliation and a hostile work environment claim based on Appellant's opposition to gender discrimination made unlawful by 2 U.S.C. 1311(a)(1) brought pursuant 2 U.S.C. 1317(a) of the CAA; and,

(c) Counts XIX-XXVI and Count XXVII, respectively discrete claims of retaliation and a hostile work environment claim based on Appellant's participation in federally protected activities pursuant to his prosecution of *Swann I* brought pursuant 2 U.S.C. 1317(a) of the CAA.

## III.  STATUTES

### A.  DISCRIMINATION PURSUANT TO 2 U.S.C. 1311(a)(1) OF THE CAA

"All personnel actions affecting covered employees shall be made free from any discrimination based on–(1) race, color, religion, sex, or national origin, within

3

the meaning of section 703 of the Civil Rights Act of 1964(42 U.S.C. 2000e-2)."

## B.  RETALIATION PURSUANT TO 2 U.S.C. 1317(a) OF THE CAA

"It shall be unlawful for an employing office to intimidate, take reprisal against, or otherwise discriminate against, any covered employee because the covered employee has opposed any practice made unlawful by this chapter, or because the covered employee has initiated proceedings, made a charge, or testified, assisted or participated in any manner in a hearing or other proceeding under this chapter

## C.  DISCRIMINATION PURSUANT TO 42 U.S.C. 2000e-2, TITLE VII

Discrimination, pursuant to 42 U.S.C. 2000e-2, in pertinent part states:

"(a) Employer practices

It shall be an unlawful employment practice for an employer--

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment, or otherwise to discriminate against, any individual because of his race, color, religion, sex, or national origin, or to classify or refer for employment any individual on the basis of his race, color, religion, sex, or national origin."  42 U.S.C. 2000e-2.

## D.  RETALIATION PURSUANT TO 42 U.S.C. 2000e-3, TITLE VII

Retaliation, pursuant to 42 U.S.C. 2000e-3, in pertinent part states:

"(a) Discrimination for making charges, testifying, assisting, or participating in enforcement proceedings.
It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment, for an employment agency, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, to

4

discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

## IV.  STATEMENT OF FACTS

### A.  FACTUAL BACKGROUND IN *SWANN I*

Appellant, on April 30, 2007, African American and female, pursuant to a competitive Vacancy Announcement, was appointed as a permanent WG-2805-08 Step 2 Electrical Worker in the Electric Shop of the House Office Buildings of Defendant, "HOB."  At all relevant times herein Appellant was the only female in said Electric Shop . Her second line supervisor was Robert Gatewood, Supervisor of the Electric Shop. At all pertinent times herein Appellant performance was rated as "fully successful" and she received merit awards based on the quality of her work. See *Swann I*,  ¶¶ 9, 10, 12, 18-19, Appendix, "App.," 14-15.

Appellant's  appointment  was delayed for approximately one month pending Appellee's need to place a lock on the door to the locker room to be shared by the female Appellant and 15 male employees on the Day Shift in the Electric Shop. Appellant, as the only female, was required to dress before or after her male co-workers, resulting in the Appellant or the male employees reporting late for duty in the morning or leaving late in the afternoon.

5

Appellant reported to Appellee the inconvenience, embarrassment and resentment of the males experienced by Appellant pursuant to her use of the formerly male only locker room and complained to Appellee about said inadequate locker room arrangement.

Appellee advised that a female locker room for the Appellant would not be provided and "locking" the door when she used the locker room was the only solution to her problem. See *Swann I*, ¶¶ 40, 41, 42, 43, 44, 45, App., p. 18.

On or about October 24, 2007 and again on March 18, 2008, Appellant submitted respective complaints in the Equal Employment Opportunity/Conciliation Programs Office, "EEO/CP," pursuant to Section 7 of the EEO/CP policy based on the application of a different administrative standard and criteria to the Appellant respecting time and attendance, the uniform dress code and job assignments and the creation of a hostile work environment respecting the social and professional isolation and segregation of the Appellant by her male co-workers in the Electric Shop; opposition to matters made unlawful by 2 U.S.C. 1311(a)(1).

Said respective complaints were closed by the EEO/CP on February 6, 2008 and June 17, 2008. See *Swann I*, ¶¶ 21, 22, 23, 28, App., 15-16.

Appellee, despite or in spite of Appellant's respective complaints, continued to apply a different administrative standard and criteria to the Appellant

6

respecting time and attendance, the uniform dress code and job assignments that was

not applied to Appellant's male co-workers in the Shop. See *Swann I*, ¶24, App. 16.

The EEO/CP conducted an "intervention;" a meeting attended by the Day Shift

of the Electric Shop on April 14, 2008. Pursuant to the "intervention" and the

identification of the Appellant as the employee who submitted the complaints in the

EEO/CP, Appellant experienced a greater hostile environment from her male

coworkers who isolated Appellant even more socially and professionally; *i.e.*

Appellant was excluded from communal social events within the Shop and isolated

from her male coworkers pursuant to job assignments. See *Swann I*, ¶¶ 25, 26, 27,20,

App. 15-16.

Subsequent to the "intervention," Appellant was teamed up with a male co-

worker who was ordered to stay with her at all times; *i.e.* on bathroom breaks and

when she returned to the Electric Shop to obtain tools and equipment. Said

heightened scrutiny lasted approximately two months.

On or about November 16, 2007, April 7, 2008, March 15, 2008 and April 4,

2008, Appellant was issued Disciplinary Letters of Counseling" pursuant to the

"Architect of the Capitol's Personnel Manual Chapter 752 - Discipline," "Chapter

752, " respectively based on her alleged use of the computer and Internet while

performing work related duties; her alleged improper signing in and, initializing at

7

the same time, her "signing out;" and, her alleged failure to timely complete assigned projects.    In issuing said "letters of counseling," Appellee applied a different administrative standard and criteria to the Appellant than that applied to Appellant's male coworkers for engaging in the same activities. See *Swann I*, ¶¶ 31-38, App.15-18.

On August 6, 2008, Appellant timely filed a "Request for Counseling" in the in *Swann I*.

On August 20, 2008, the Executive Director of the Office of Compliance, pursuant to 2 U.S.C. 1401 of the CAA, referred *Swann I* to be processed pursuant to Appellee's internal grievance procedures.

Appellee, contrary to applying the appropriate procedures contained in Section 6 of said EEO/CP policy, processed *Swann I* pursuant to Section 7 of said policy. In not processing *Swann I* appropriately,  Appellee deprived Appellant of  her detailed entitlement set forth in said Section 2.03(m) of the Procedural Rules of the Office of Compliance, "Procedural Rules."   On January 19, 2009, "counseling" resumed in the Office of Compliance pursuant to the order of the Executive Director of the Office of Compliance based on Appellee's violation of the mandatory provisions contained in said Section 2.03(m) of the Procedural Rules. See *Swann I*, ¶¶ 46 47, 48, 49, 50. See Section 2.03(m) of the Procedural Rules.  App. 18-19 and

8

428-431, 436-442.

## B.  FACTUAL BACKGROUND IN *SWANN II*

On October 28, 2009, Appellant was assigned by Supervisor Moore to work at the Firing Range with Dennis Herrera and Sean Cox, two GS-11 Electric Mechanics. Appellant, as she had in previous conversations with Supervisor Moore, repeated her objections to working with Herrera.  Appellant timely reported to her work station.  Pursuant to the absence of Cox and Herrera at the Firing Range, Appellant went to the "Shoe Truck" located on the south side of the Rayburn HOB. Upon arrival at the "Shoe Truck" she saw Cox and Herrera  Appellant advised  Cox of her objections  to working with Herrera and that when she finished getting her work shoes she was going to speak with Deputy Superintendent Carroll to express her concerns and problems working with Herrera and the on going hostile work environment in the Electric Shop caused by her female sex and gender.  At approximately 7:40am the Appellant finished at the "Shoe Truck."  She returned to the Firing Range at approximately 7:43am.  Cox and Herrera again were not present. Appellant, by phone message, informed Supervisor Moore that she was going to see Deputy Superintendent Carroll. See *Swann II*,  ¶¶ 12, 14-19, 21- 24, App.284-286.

At 7:48am Appellant entered the office of Deputy Superintendent Carroll located within the Superintendent's Office of the House Office Buildings, "HOB's,"

9

and closed the door upon entering. She advised Carroll of her concerns working with Herrera and the hostile work environment in the Electric Shop caused by her female sex and gender. She requested reassignment to work with another Electric Mechanic or reassignment to a different House Office Building. See *Swann II*, ¶¶ 24-28.

Deputy Superintendent Carroll's demeanor, manner, and disposition changed from an initial conversational tone to an aggressive, hostile and threatening tone after hearing Appellant's complaints. At one point he stood up, leaned forward and slammed the palm of his hand on the desk and yelled at the Appellant "that he was tired of having to deal with this issue." See *Swann II*, ¶¶ 29-31, App., 286.

Deputy Superintendent Carroll aggressively waived his hands in a threatening manner while speaking to the Appellant to which Appellant rose from her chair and proceeded to leave Carroll's office. She was more upset speaking with Carroll than she had been when she entered his office. Carroll ordered the Appellant to return to his office as she was leaving and yelled "that if she did not come back with him to his office he would "write her up," *i.e.*, discipline the Appellant. Appellant advised Carroll that his aggressive and threatening behavior had upset her. See *Swann II*, ¶¶ 32-36, Appendix 286-287.

The Appellant exited the inner office of Deputy Superintendent Carroll and outer office of the Superintendent's Office and proceeded down the hallway to the

elevators to get away from Carroll who followed her and continued to yell at her to return to his office as she was proceeding to return to her work station.    The Appellant entered an elevator to return to the underground level of the Firing Range and Carroll followed her onto the elevator.  Appellant immediately  exited the elevator but was closely followed off the elevator by Carroll.  Appellant got on a second elevator to get away from Carroll who got on this second elevator entered by the Appellant.   Appellant again told Carroll that she was too upset to continue a conversation with him.  See *Swann II*,  ¶¶ 37-43, App., 287.

Deputy Superintendent Carroll, while still yelling at the Appellant, ordered the Appellant to appear in the Electric Shop for a meeting with him and Supervisor Moore at 8:00am.  Appellant advised Carroll she was too upset and was going to the Nurse in the Attending Physician's Office, "APO," of the HOB's. Carroll then threatened Appellant with discipline if she did not return from the Attending Physician's Office in time to meet with him and Supervisor Moore at 8:00am in the Electric Shop.  See *Swann II*,  ¶¶ 44-46, App., 287-288.

Appellant proceeded to the APO in the Rayburn HOB and finding it closed proceeded to the APO  in the Capitol which was closed  when she arrived. See *Swann II*,  ¶¶ 47-49, App. 288.

As Appellant was leaving the vicinity of the APO in the Capitol to return to the

11

Rayburn HOB, the Nurse reporting for duty in the Capitol arrived and allowed the

Appellant to enter the APO even though the APO had not as yet opened for the day.

Appellant's blood pressure was taken and found it to be high. The Nurse telephoned

the Electric Shop and advised management that the Appellant was in the APO in the

Capitol. Appellant, pursuant to her visit to the APO, was unable to attend the 8:00am

meeting in the Electric Shop of the HOB's to be attended by Supervisor Moore and

Deputy Superintendent Carroll. See Swann II, ¶¶ 50-53, App., 288.

Appellant, when she was able to calm down, was released by the Nurse and

returned to the Electric Shop. On returning to the Shop she inquired of Supervisor

Moore whether there was going to be a meeting with Supervisor Moore and Deputy

Superintendent Carroll. Supervisor Moore advised the Appellant there was to be no

meeting and that she was to return to the Firing Range as there was no place else to

assign Appellant to work that day. See Swann II, ¶¶ 54-56, Appendix, p. 288-289.

On November 10, 2009, Appellant submitted a Grievance pursuant to the

Architect of the Capitol's Personnel Manual Chapter 771, "Chapter 771," to

Superintendent Weidemeyer of the HOB's and first line Supervisor to Deputy

Superintendent Carroll. On November 16, 2009, Weidemeyer notified the Appellant

that he had forwarded Appellant's Chapter 771 Grievance based on workplace

violence and discrimination for respective investigation by Evelyn Goodwin, then

12

Acting Deputy Chief Human Capitol Officer for Operations, "CHCO," and the EEO/CP. Said ad hoc procedures implemented by Weidemeyer deprived Appellant of the procedures prescribed for Grievances in said Chapter 771. Weidemeyer, in further violation of said prescribed procedures, at no time provided the Appellant with "his" response to her Grievance. Appellant's Grievance, pursuant to Weidemeyer's ad hoc procedures, was denied. See *Swann II*, ¶¶ 57-60, 69-79, Appendix, p. 289-292 and 398-410.

On November 17, 2009, seven days after Appellant submitted her Grievance, Supervisor Moore, Appellant's first line supervisor, issued Appellant a Chapter 752 Incident Report based on her alleged failure to obey the "reasonable" orders of Deputy Superintendent Carroll on October 28, 2009 and her alleged "disappearance during duty hours," on October 28, 2009. See *Swann II*, ¶61, Appenix, p. 289.

On November 24, 2009, two weeks after Appellant submitted her Chapter 771 Grievance, Supervisor Moore issued a Chapter 752 Proposal to Reprimand Appellant based on the same issues set forth in the Incident Report. See *Swann II*, ¶62-63, App., 289-290.

On December 16, 2009, Appellant timely responded to said Proposal to Reprimand. On January 7, 2010, Superintendent Weidemeyer concurred with said Proposal to Reprimand. See *Swann II*, ¶¶ 64-66, App., 290.

13

On January 13, 2010, Appellant timely requested a case review by a Hearing Officer on said Proposal to Reprimand.  On February 5, 2010, Stephen T. Ayers, Acting Architect of the Capitol, issued a Final Decision to Reprimand Appellant for her disappearance during duty hours on October 28, 2009 and failure to obey the reasonable orders of a supervisor on said date.  See *Swann II*, ¶¶ 67- 68, Appendix, p. 290.

Appellant, unable to resolve the hostile work environment internally pursuant to the violations in the Chapter 771 procedures, submitted her Request for Counseling in *Swann II* in the Office of Compliance. See *Swann II*, ¶¶ 80, App., 292.

## V.  SUMMARY OF ARGUMENT

### A.  COUNTS I AND II IN *SWANN I* AND THE EXHAUSTION ISSUE

The Court, with respect to Counts I and II in *Swann I*, determined that Appellant failed to exhaust her administrative remedies pursuant to her August 6, 2008, Request for Counseling based on the "final decision" made by Assistant Supervisor Murphy "shortly after" the hiring of the Appellant in April 2007 and made in a vacuum absent actual knowledge respecting the disproportionate access and use of the locker room by the 15 males in said Electric Shop.

At the time it was made, said "final decision" was made in a vacuum absent implementation and evaluation of the access and use of the locker room as accutally

14

experienced by the Appellant.

Only over time and use was the arrangement evaluated and assessed and determined to be unsatisfactory to the Appellant and said 15 male employees who required the use of the locker room.

Accordingly, Appellant contends, when she submitted her Request for Counseling in *Swann I,* she timely exhausted her administrative remedies respecting said daily and unsatisfactory use of said locker room arrangement she experienced, opposed and gave notice, absent a response by Appellee to Appellant's on going complaints of gender discrimination.

## B.  "EMPLOYER CONDUCT" AND THE CAA

Appellant contends the District Court , by misapprehending the broad standard of "employer conduct" made actionable by the statutory text of the CAA statutes respecting discrimination and retaliation as one and the same as the narrower standard of "employer conduct" made actionable for discrimination and retaliation under Title VII, incorrectly applied said narrower Title VII standards of "employer conduct" to the broader CAA discrimination and retaliation statutes

Appellant further contends the District Court, in contravention of the expressed text of said CAA statutes, violated the necessary consistency of the text of the CAA retaliation statute with the text of the CAA discrimination statute and violated  the

necessary consistency of the text of the retaliation statute with the statutory scheme of the CAA respecting the eleven workplace statutes made applicable to the CAA and effected thereby an implied repeal and veto of the Congressional intent implementing the proprietary interest of Congress in the operation of Congress and its instrumentalities.    See *Natural Resources Defense Council* v. *Reilly*, 983 F.2d 259(D.C. Cir. 1993).

With due deference, appellant contends that the District Court erred by substituting and applying this Circuit's narrower Title VII standard for discrimination and retaliation for the broader standards established by the statutory language of said CAA statutes and formal adjudication by the Board of Directors of the Office of Compliance, the "Board," pursuant to its delegated authority to make rules carrying the force of law and def erence consistent with the prohibitions of discrimination and retaliation set forth in the respective statutory language in 2 U.S.C. 1311(a)(1) and 2 U.S.C. 1317(a) of the CAA and *Britton* and *Solomon, supra.*

The District Court, by incorrectly viewing the scope of discrimination and retaliation under the CAA as the same as Title VII, determined said statutes should be interpreted as "if they were one law" and applies the Circuit's narrower scope of Title VII to the CAA provisions when the broader statutory scope of said CAA provisions is made evident by the expressed statutory language of the CAA.

16

Notably, Title VII regulates the private sector and executive branch of the Federal Government and is specific in its terms for regulating said prohibitions. The CAA regulates the Legislative Branch. Its standards for prohibited activity, based solely on statutory language, is broader in scope than Title VII prohibitions.

Congress could have but did not replicate or incorporate by reference Title VII's narrower statutory language and statutory scheme for the broader CAA discrimination and retaliation as it did by applying Title VII remedies to the CAA. See 2 U.S.C. 1311(b) and 2 U.S.C. 1317(b). In enacting the new and unique Administrative Judicial Dispute Resolution Procedures of the CAA, Congress determined its proprietary interests for itself and its instrumentalities were to be regulated by legislation specific to Congress and its instrumentalities.

The "two acts" are capable of coexistence even if they produce differing results when applied to the same factual situation. The statutory provisions at issue cannot be said to be in "irreconcilable conflict" in the sense that there is a positive repugnancy between them or that they cannot mutually coexist. They do not have to be harmonized. "When two statues are capable of coexistence, it is the duty of the courts ...to regard each as effective." *Morton* v. *Mancari*, 417 U.S. 535, 551(1974).

The specific statutory purposes of the CAA and Title VII can be served absent interference by each act with the implementation of the other. Neither act covers the

17

subject of the other or is intended as a substitute of the other. The CAA, neither expressly or implicitly, conflicts with, repeals or affects the implementation of Title VII and the areas it regulates. There is no necessary conflict.

Congress, by enacting specific legislation, rejects the narrower Title VII standard for discrimination. There is no special reason for questioning the legislative intent to deprive the CAA of what it says. It is a fundamental canon of statutory construction that "unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning." *Bowsher* v. *Merck & Co.*, 460 U.S. 824, 103 S.C.1587(1983) citing *Perrin* v. *United States*, 444 U.S. 37, 42(1979).

The conflict that has arisen between the two statutes is created solely by the Court's interpretation of the CAA contravening the expressed intent of Congress. The Court, by applying and substituting Title VII standards for the CAA standards, ignores, rejects, and edits out the standards established by Congress for itself.

The Court's interpretation impliedly repeals the expressed intent of Congress. Repeals by implication, "absent a clearly expressed congressional intention," are strongly disfavored. *Branch* v. *Smith*, 538 U.S. 254(2003).

This is not the "usual" case of implied repeal respecting two acts in irreconcilable conflict where the later act, to the extent of the conflict, constitutes an implied repeal of the earlier act or the later act covers the whole subject of the earlier

18

one and is clearly intended as a substitute and repeal of the earlier act. It is evident that the CAA and Title VII fall into neither category. Neither act interferes with the implementation of the other. Moreover, the intention of Congress to repeal must be clear and manifest and that necessary statutory language and said intent is lacking and deprives the CAA of its meaning intended by Congress. See *Posadas* v. *National City Bank*, 296 U.S. 497, 503(1936).

## VI. ARGUMENT

### A. STANDARD OF REVIEW

This Court reviews *de novo* a District Court Order granting a motion to dismiss based on Rule 12(b)(6) of the FRCP. *Rochon* v. *Gonzales*, 438 F.3d 12121(D.C.Cir. 2006) citing *Covad Communications Co.* v. *Bell Atlantic Corp.*, 398 F.3d 666, 670-71(D.C.Cir. 2005). See also *Croixland Properties Ltd.* v. *Corcoran*, 174 F.3d 213, 215(D.C.Cir. 1999). The Court is to treat the Complaint's factual allegations as true. See *Leatherman* v. *Tarrant Count Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 164(1993), and must grant appellant "the benefit of all inferences that can be derived from the facts alleged." *Schuler* v. *United States*, 617 F.2d 604, 608(D.C.Cir. 1979) and *Croixland Properties*, *supra*, 174 F.3d at 215.

### B. COUNTS I AND II IN *SWANN I*

19

Count I and Count II in *Swann I* are allegations of disparate treatment and disparate impact respecting Appellant's "separate and unequal" access to and disproportionate use on a "first come basis" of the same locker room used by the male employees in the historically and culturally male only House Electric Shop;  an adverse employment action.  Disparate impact claims "are concerned with whether employment policies or practices that are neutral on their face and were not intended to discriminate have nevertheless had a disparate effect on [a] protected group." *Robinson* v. *Metro-North Commuter R.R. Co.*, 267 F.3d 147, 160(2d Cir. 8, 2001).

Appellee asserted that the "separate but equal" use by the Appellant and the 15 males of the same locker room facility on a "first come basis" was benign and asserted that the disparate impact and discriminatory treatment inuring to the Appellant did not substantively rise to the level of a material adverse action; a decision based on a standard not applicable to the CAA and in conflict with the statutory language of 2 U.S.C. 1311(a)(1) and 2 U.S.C. 1361(f)(1).

The allegedly "first come" neutral policy results however, as a practical matter, in precluding and depriving the Appellant of a proportionate access and use of said locker room facility both on arriving and leaving the workplace  should the males get first opportunity to the locker room facility.

Should the Appellant  have first opportunity to use the locker room she is

pressured by the overwhelming number of male employees to rush her use of and exit the locker room. Either way, the Appellant is deprived of an equal and proportionate opportunity to use the locker room, an entitlement of employment, in the same manner as the male employees of the Electric Division.

The locker room arrangement devised by Appellee for use by the Appellant and the 15 male employees of the Electric Shop was neither separate nor equal and was not benign as it resulted in requiring the Appellant to either dress before or after her male co-workers and resulted in the Appellant and/or the male employees of the Electric Shop reporting late for duty or leaving late at the end of a shift.

From the vantage point of the male employees who dominate said House Electric Shop, the Appellant has brought any injury upon herself, if it could be said she suffered injury at all; a common response to an outsider's complaint of injustice and discrimination. The outsider, the female Appellant, is the source of the problem. Appellee, absent identification and explanation in its Motion for Summary Judgment, attributes Appellant's problems in the House Electric Shop to a "personality conflict."

Notably, Teresa Bailey, former Director of the EEO/CP attempted but failed to water down the findings of the investigator who noted the Appellant was ostracized by the male employees of the Electric Division and felt antagonistic towards Appellant; proof of the legitimacy of Appellant's complaint.

21

Former Director Bailey found that "ostracize and antagonism were strong words and not appropriate for the report and that the Appellant was treated differently because of her alleged participation in gossip that portrayed her co-workers as unfavorable." Director Bailey's attempt to identify Appellant's alleged engagement in "gossip" as the cause of Appellant's problems, the historically "stereotypical" behavior attributed to females of which no male would be accused, not only evidences but reinforces Appellant's claims of gender discrimination. See Appellant 's Exhibit 3, Pages 47- 52 and DDR 281-286 and Ms.Bailey's hand written notes on Page 5 of the draft investigation report.

There is no dispute however, that pursuant to a "force of numbers" analysis, gender discrimination results from a facially and allegedly neutral policy; *i.e.* the disparate treatment and disparate impact respecting Appellant's less than equal access to and use of the same locker room used by said15 males.

The allegedly "first come" neutral policy results, as a practical matter, in precluding and depriving Appellant of a proportionate use of said locker room should she not occupy the locker room "first."

There is no dispute that the overwhelming disparity of 15 males to the sole female Appellant provided the males with a more favorable access to the locker room and a less favorable use by the Appellant or that Appellant found said arrangement

22

to be less than acceptable and challenged the practice.

The statistical evidence of the use of the one locker room "on a first come basis" by the 15 males and the Appellant is sufficient to preclude dismissal as there is no dispute that Appellant made a *prima facie* case of intentional and disparate impact discrimination: "(1) the occurrence of certain outwardly neutral ...practices, [*i.e.* the facially neutral access and use of the locker room facility on a `first come' basis by the 15 males and female Appellant ]; and (2) a significantly adverse or disproportionate impact on [the female Appellant] produced by the [defendant's] facially neutral acts or practices, [*i.e.* the unequal access and use by the 15 males versus the access and use of the locker room by the female Appellant]." *Palmer* v. *United States*, 794 F.2d 534, 538 (9th Cir. 1986) (citing *Spaulding* v. *University of Washington*, 740 F.2d 686, 705 (9th Cir.), *cert. denied*, 469 U.S. 1036(1984).

Appellant contends that the statistical evidence of access to and use of the one locker room in the Electric Division on a first come basis by the fifteen males and female Appellant is sufficient to preclude summary judgment in the instant matter.

Statistical evidence is an acceptable, and common, means of proving disparate impact. See, e.g., *Sandoval* v. *City of Boulder*, 388 F.3d 1312, 1326 (10th Cir. 2004) and *Mountain Side Mobile Estates P'ship* v. *Sec'y of HUD*, 56 F.3d 1243, 1251 (10th Cir. 1995) ("In Title VII employment discrimination cases, Appellant s may rely

solely on a statistical showing of disparate effect to establish a prima facie case of disparate impact.").

The Court noted in *Yant* v. *United States*, 588 F.3d 1369, 1373-74 (Fed. Cir. 2009) that "[m]ere reliance on gender ratios of two groups [to show disparate impact] does not establish discrimination based on sex. However, the Supreme Court has noted that disparate impact, while not inherently unlawful, supports a finding of purposeful discrimination. See, *e.g.*, *Washington* v. *Davis*, 426 U.S. 229, 242 (1976)("[A]n invidious discriminatory purpose may often be inferred from the totality of the relevant facts, including the fact, if it is true, that the law bears more heavily on one [gender] than another.")

The refusal by Appellee to provide the female Appellant with an adequate locker room facility deprived Appellant of equal terms, conditions and privileges of employment provided male employees of the House Electric Shop; an adverse employment action which, when challenged and exposed by the Appellant, raised the "negative visibility" of the Appellant in the Electric Shop and "male only" management of the HOB's which further deprived Appellant of the opportunity to assimilate in said House Electric Shop. "Negative disability" was noted in the April 3, 2008, notes of EEO/CP counsel Cesar Korzeniewicz which revealed that Mr. Gatewood, Appellant s first line supervisor, was warned by Superintendent Tiscione

24

of the HOB's that Mr. Gatewood's position would be jeopardized by his employees in the Electric Shop going to the EEO/CP with issues, *i.e.* Appellant. See Appellant's Exhibit 1 on her Opposition to Motion for Summary Judgement.

Appellant contends there was a pattern of gender discrimination resulting from the overwhelmingly statistical disparity between the male employees and the female Appellant in the Electric Shop who complained and opposed the disparate treatment and disparate impact respecting Appellant's disproportionate access to and use of said locker room which resulted, pursuant to her opposition, in the disparate treatment and retaliation further alleged in *Swann I* and *Swann II*.

## C. COUNTS I AND II IN *SWANN I* AND THE EXHAUSTION ISSUE

The Court, with respect to Counts I and II in *Swann I*, determined that Appellant failed to exhaust her administrative remedies pursuant to her August 6, 2008, Request for Counseling based on the "final decision" made by Assistant Supervisor Murphy "shortly after" the hiring of the Appellant in April 2007 and made in a vacuum absent actual knowledge respecting the disproportionate access and use of the locker room by the 15 males in said Electric Shop.

At the time it was made, said "final decision" was made in a vacuum absent implementation and evaluation of the access and use of the locker room as actually experienced by the Appellant.

25

Only over time and use was the arrangement evaluated and assessed and determined to be unsatisfactory to the Appellant and said 15 male employees who required the use of the locker room.

Appellant did not need a new "hire" to start anew a "limitations period." when the arrangement implemented was not known to be satisfactory or unsatisfactory

Appellee cannot, based on the "delivery" of a "final decision" respecting an untried arrangement, establish the date of the disparate and discriminatory treatment and impact resulting to the Appellant were neither manifest or known to the Appellant "shortly after" her hiring.

Appellee should not profit from its own wrongdoing thereafter in not responding to the periodic opposition of the Appellant to the discriminatory treatment and disparate impact she experienced. If one takes the maxims of equity seriously, then the judiciary should not permit a party to profit from [its] own wrongdoing. See *International Union, United Auto., Aerospace and Agr. Implement Workers of America (UAW)* v. *N.L.R.B.*, 459 F.2d 1329(D.C.Cir. 1972) citing *Reynolds* v. *United States*, 98 U.S. (8 Otto) 145(1878).

Accordingly, Appellant, when she submitted her August 6, 2008, Request for Counseling in *Swann I*, timely exhausted her administrative remedies respecting said

26

daily and unsatisfactory use of said locker room arrangement she experienced, opposed and gave notice, absent a response by Appellee to Appellant's on going complaints of gender discrimination.

Appellee had an obligation to respond to Appellant's opposition to the inadequacy of the locker room arrangement as experienced by the Appellant, when the complaints are opposition by Appellant were made known to Appellee.

Appellee, in identifying the final decision of management as occurring shortly after the hiring of the Appellant, admitted against interest that it did not respond to Appellant's on going and continuing opposition to the discriminatory arrangement subsequent to its final decision shortly after Appellant's hiring but before the arrangement was determined to be workable.

Appellee's refusal to respond to Appellant's opposition, demonstrated by its silence and administrative inaction, effected the on going and continuing disproportionate access and use of the locker room facility by the Appellant.

Appellee , based on its on going discriminatory treatment affecting the Appellant and its on going and continuing silence and inaction respecting the Appellant's opposition, forfeited and waived its rights to an exhaustion argument.

Appellee, when it identified the voluntary acceptance by the Appellant shortly after her  hiring but before the untried arrangement had been fully experienced,

27

proposed that the Appellant, by her hiring, created the adverse action of which she complained. It is axiomatic that a Appellant cannot create an adverse action through her own voluntary actions. See *Morongell* v. *Miami-Dade Country*, 2008 WL 4938421 at *5(S.D.Fla. 2008).

### D.   THE "EMPLOYER CONDUCT" ARGUMENT; AND, THE DECISIONS OF THE DISTRICT COURTS

Plaintiff contends that in error, the District Courts in this Circuit rely on and cite the decisions of other District Courts which have applied Title VII standards to allegations of discrimination and retaliation brought under the CAA; statutes not *in pari materia* with the Title VII discrimination and retaliation statutes.

The Court noted in *Mathews* v. *CIR*, 907 F.2d 1173(D.C.Cir. 1990) that "[I]t would be manifestly inappropriate to rely on statues, regulations and cases having limited purpose and applicability to interpret, in derogation of a plain meaning, another statue having an unrelated purpose. As the Supreme Court stated in *United States* v. *Stewart*, [311 U.S. 60(1940)],   [n]o collection of other statutes can be decisive in determining what the instant statute means."

The Court, citing 18 *Moore's Federal Practice* 3D Section 134.02[1][d], noted that "[A] decision of a federal district judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case." *Louisiana Wholesale Drug Co., Inc.* v. *Biovail Corp.*, 437 F.

28

Supp.2d 79, 2006 WL 1722564 (D.D.C.). The Court noted "[H]owever, [that] `[a] court should give considerable weight to its own previous decisions unless and until they have been overruled or undermined by the decision of a higher court or a statutory overruling.' *Id.* at Section 134.02[c][d]." *Id.,* Footnote 3.

Plaintiff's counsel, mindful of the disposition of said citations and to avoid the application of *stare decisis* and even the persuasive weight of said prior decisions in the immediate Circuit, asserts legal error in the application of said District Courts' decisions sounding *in pari materia*; a misapprehension and contravention of the expressed statutory text and scheme of the CAA implementing the eleven workplace statutes made applicable to the CAA effecting an implied repeal and veto of the Congressional intent to implement the proprietary interest of Congress in the operation of Congress and its instrumentalities. See *Natural Resources Defense Council* v. *Reilly*, 983 F.2d 259(D.C. Cir. 1993).

Plaintiff reiterates below the cautionary preface issued by the Supreme Court respecting the application of rules under Title VII to the rules under the Age Discrimination in Employment Act of 1967, "ADEA," and the rules under the Americans With Disabilities Act of 1990, "ADA:"

"EEOC enforcement mechanisms and statutory waiting periods for ADEA claims differ in some respects from those pertaining to other statutes the EEOC enforces, such as Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. 20000e *et seq.*, and the Americans with Disabilities Act of 1990, as amended 42

29

U.S.C. 12101 *et seq.* While there may be areas of common definition, employees and their counsel must be careful not to apply rules applicable under one statute to a different statute without careful and critical examination. Cf. *General Dynamics Land Systems, Inc.*, v. *Cline*, 540 U.S. 581, 586-587, 124 S.Ct. 1236(2004). This is so even if the EEOC forms and the same definition o f charge apply in more than one type of discrimination case." *Federal Express Corporation* v. *Holowecki*, 128 S.,Ct. 1147(2008).

With due deference, Plaintiff contends that the District Courts have erred by substituting and applying the Circuit's narrower Title VII standard for retaliation for the  broader standard established by formal adjudication by the Board of Directors of the Office of Compliance, the "Board," pursuant to its delegated authority to make rules carrying the force of law and deference consistent with the statutory prohibitions of discrimination and retaliation set forth 2 U.S.C. 1311(a)(1) and 2 U.S.C. 1317(a) of the CAA and *Britton* and *Solomon, supra.*

The District Courts, by incorrectly viewing the broader scope of discrimination and retaliation under the CAA as the same as the narrower scope of discrimination and retaliation under Title VII, determined said statutes should be interpreted as "if they were one law" and apply the Circuit's narrower scope of  Title VII to said CAA provisions when the broader statutory scope of said CAA provisions is made evident by the expressed statutory language of the CAA.

Congress  could have but did not replicate or incorporate by reference Title VII"s narrower statutory language and statutory scheme for the broader scope of

discrimination and retaliation under the CAA as it did by expressly applying Title VII remedies to the CAA.  <u>See</u> 2 U.S.C. 1311(b) and 2 U.S.C. 1317(b).

In enacting the new and unique Administrative Judicial Dispute Resolution Procedures of the CAA, Congress determined its proprietary interests for itself and its instrumentalities were to be regulated by legislation specific to Congress and its instrumentalities.

The "two acts" are capable of coexistence even if they produce differing results when applied to the same factual situation.  The statutory provisions at issue cannot be said to be in "irreconcilable conflict" in the sense that there is a positive repugnancy between them or that they cannot mutually coexist.   They do not have to be harmonized. "When two statues are capable of coexistence, it is the duty of the courts ...to regard each as effective." *Morton* v. *Mancari*, 417 U.S. 535,  551(1974).

The specific statutory purposes of the CAA and Title VII can be served absent interference by each act with the implementation of the other.  Neither act covers the subject of the other or is intended as a substitute of the other.  The CAA, neither expressly or implicitly, conflicts with,  repeals or affects the implementation of Title VII and the areas it regulates.   There is no necessary conflict.

Congress, by enacting specific legislation, rejects the narrower Title VII standard for discrimination. There is no special reason for questioning the legislative

31

intent to deprive the CAA of what it says. It is a fundamental canon of statutory construction that "unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning." *Bowsher* v. *Merck & Co.*, 460 U.S. 824, 103 S.C.1587(1983) citing *Perrin* v. *United States*, 444 U.S. 37, 42(1979).

The conflict that has arisen between the two statutes is created solely by the Court's misinterpretation of the CAA contravening the expressed intent of Congress. The Court, by applying and substituting Title VII standards for the CAA standards, ignores, rejects, and edits out the standards established by Congress for itself.

The Court's interpretation impliedly repeals the expressed intent of Congress. Repeals by implication, "absent a clearly expressed congressional intention," are strongly disfavored. *Branch* v. *Smith*, 538 U.S. 254(2003).

This is not the "usual" case of implied repeal respecting two acts in irreconcilable conflict where the later act, to the extent of the conflict, constitutes an implied repeal of the earlier act or the later act covers the whole subject of the earlier one and is clearly intended as a substitute and repeal of the earlier act. It is evident that the CAA and Title VII fall into neither category. Neither act interferes with the implementation of the other. Moreover, the intention of Congress to repeal must be clear and manifest and that necessary statutory language and said intent is lacking and deprives the CAA of its meaning intended by Congress. See *Posadas* v.

32

*National City Bank*, 296 U.S. 497, 503(1936).

### E.  THE "EMPLOYER CONDUCT" ARGUMENT; AND, THE CAA AND TITLE VII ARE NOT *IN PARI MATERIA*

Defendant's argument sounding *in pari materia*, where the standard used for "employer conduct" made actionable under Title VII is used for "employer conduct" made actionable under the CAA, conflicts with cardinal rules of statutory construction and is without merit whether asserted in support of a dismissal motion based on Rule 12(b)(1), Rule 12(b)(6) or Rule 56 of the FRCP.

### 1.  THE PRINCIPLE OF *IN PARI MATERIA* AND CONFLICTING PRINCIPLES OF STATUTORY CONSTRUCTION

Pursuant to the well-settled principle of law, statutes that are" *in pari materia* are to be construed together; that the different statutes are to be construed as one; that they must be viewed together in all their parts' and if, by a fair construction, the whole can stand together, it is the duty of the court to put that construction upon them." *Fanning* v. *Gregoire*, 57 U.S. 524, 528(1853).

On analysis, there are critical differences between the CAA and Title VII which at all times adheres to the constitutional principle of the separation of powers.

The CAA was enacted in 1995 and effective in 1996; respectively thirty five and thirty six years subsequent to the enactment of Title VII for the private sector. The CAA was enacted in 1995, twenty five subsequent to the enactment of Title VII

33

and twenty three years subsequent to the enactment of 42 U.S.C. 2000e-16, whereby the entitlements of Title VII, as enacted and amended, were provided to the employees of the Executive Branch of the Federal government and the excepted employees of the Library of Congress, the General Accounting Office and General Printing Office, Legislative Branch employees.

The CAA, passed by a Congress different than the Congress that enacted Title VII and 42 U.S.C. 2000e-16, relates to a limited pool of legislative employees; a subject group of employees, separate and distinct from the private sector and Federal Executive sector.

Notably, Title VII regulates employment within the private sector and Executive Branch of the Federal Government whereas the CAA regulates employment within the Legislative Branch of the Federal Government and provides the legislative employees identified hereafter, a limited prospective pool of employees in comparison to the enormous number of employees in the private sector and Executive Branch of the Federal Government: the legislative employees of the Senate and House of Representative, the Capitol Guide Board, the Capitol Police, the Congressional Budget Office, the Defendant Office of the Architect of the Capitol, the Office of the Attending Physician, the Office of Compliance and the Office of Technology Assessment.  See 2  U.S.C. 1301(3).

34

Notably, Congress, pursuant to 2 U.S.C. 1302 and the expressed statutory limitations expressed therein, made eleven workplace laws applicable to the limited pool of legislative employees identified above, whereas Title VII's scope in comparison is limited to discrimination based on race, color, religion, sex, or national origin and retaliation based on "opposition" and "participation" arising from the sole predicate of Title VII

Congress actively engaged in said matters affecting Congress by creating an independent Congressional tribunal in which primary interpretation and application of the substantive rules of the Congressional Accountability Act were confided in the Board of Directors of the independent Office of the Compliance, the "Board."

Congress actively engaged in said matters affecting Congress by enacting substantive rules of law to be enforced not by any tribunal competent to apply law generally to parties, but by the Board; the independent Congressional tribunal in which primary interpretation and application of said rules were confided.

Congress actively engaged in said matters affecting Congress by prescribing particular CAA procedures for counseling, compliant, notice, mediation, hearing and decision, and judicial relief pending a final administrative order; procedures unique and distinct from the procedures implementing Title VII and 42 U.S.C. 2000e-16.

Complaints, brought pursuant to the Administrative Judicial Dispute

35

Resolution Procedures of the CAA, are processed in the specially created independent Office of Compliance pursuant to procedures separate and distinct from the administrative procedures used to process complaints under Title VII for the private sector and Federal Executive sector indicating yet another relevant and material difference between the CAA and Title VII.

Congress evidently considered and determined that centralized administration by the Board was necessary to obtain uniform application of CAA substantive rules and to avoid conflicting adjudications from a multiplicity of judicial fora/forums.

There is no question that Congress was aware of the analogy between Title VII and CAA, however, based on practical distinctions between the CAA comprehensive statutory scheme and Title VII's statutory scheme and to remain consistent with the separation of powers principle, it is clear that the Congress did not draft the CAA as a mirror image to the comparable legislation governing private and public sector Title VII law. The CAA, on its face, was neither enacted as a supplement to Title VII nor enacted to supercede the Title VII scheme and implicitly recognizes the separation of powers intended by Congress by enacting a statute significantly different from Title VII.

## 2. DISCRIMINATION BASED ON SEX AND GENDER UNDER THE CAA; AND, GENERAL PRINCIPLES OF STATUTORY CONSTRUCTION

36

The "standard" of "employer conduct" made "actionable" for a claim of discrimination under the CAA is expressed in the statutory language of 2 U.S.C. 1311(a)(1): "All personnel actions...shall be made free from any discrimination based on–...sex..., within the meaning of the Civil Rights Act of 1964(42 U.S.C. 20000e-2."

Courts, in construing statutes, first look to the language of the legislation. "The task of resolving the dispute over the meaning of [2 U.S.C. 1311(a)(1)] begins where all such inquiries must begin: with the language of the statute itself." *United States* v. *Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241(1989) citing *Landreth Timber Co.* v. *Landreth*, 471 U.S., 681, 685()1985), "*Ron Pair.*" See also *United States* v. *Bass*, 404 U.S. 336, 339, 30 L. Ed. 2d 488, 92 S. Ct. 515 (1971). *Caminetti* v. *United States*, 242 U.S. 470, 485(1917); *Zaimi* v. *United States*, 155 U.S.App.D.C. 66, 71, 476 F.2d 511, 516 (D.C.Cir. 1973).

Further, it is "[a] fundamental canon of statutory construction ... that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning." *Perrin* v. *United States*, 444 U.S. 37, 42, 100 S.Ct. 311, 62 L.Ed.2d 199 (1979) citing *Burns* v. *Alcala* , 420 U.S. 575, 580-581(1975). The ordinary, contemporary and common meaning of "all" excludes qualification.

The Court noted in *United States* v. *Villanueva-Sotelo*, 515 F.3d 1234(D.C.Cir. 2008) that "[T]he *first* principle of statutory construction, however, is to apply

37

common sense in the reading of language. See *U.S.* v. *Howell*, 11 Wall. 432, 78 U.S. 432, 436(1870)("[O]ne of the first canons of construction teaches us to avoid if possible [a result] which is at war with the common sense...."); *Roschen* v. *Ward*, 279 U.S. 337, 339, 49 S.Ct. 336(1929)("[T]here is no canon against using common sense in construing laws as saying what they obviously mean."); *Nat'l. Rifle Ass'n. of Am., Inc.*, v. *Reno*, 216 F.3d 122, 127(D.C.Cir. 2000)."

Where, as here, using common sense, "when the words of [the] statute are unambiguous, then, this first canon is also the last: judicial inquiry is complete." *Connecticut National Bank* v. *Germain*, 503 U.S. 249, 253–254, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992). <u>See</u> also *Rubin* v. *United States*, 449 U.S. 424, 430(1981).

In this case the statutory language before the Court that "all" "**claims**" were "actionable" under the CAA expresses Congressional intent  "with sufficient precision so that reference to legislative history and to [Title VII] practice is hardly necessary." *Ron Pair, supra*, 489 U.S. at 241.

Where, as here, using common sense, the statutory language is plain, "the sole function of the courts is to enforce it according to its terms." *Ron Pair, supra,* 489 U.S. at 241 citing *Caminetti, supra*, 242 U.S. at 485.

Where, as here, using common sense, the ordinary, contemporary and common meaning of the expressed statutory language "admits of no more than one meaning,

the duty of interpretation does not arise...." *Caminetti, supra.*, 242 U.S. at 485. <u>See</u> also *Callanan* v. *United States*, 364 U.S. 587, 594-95(1961); *United States* v. *Public Util. Comm'n*, 345 U.S. 295, 312-13, (1953); *Sea-Land Serv., Inc.* v. *FMC*, 131 U.S.App.D.C. 246, 248-49, 404 F.2d 824, 826-27 (D.C.Cir.1968); *District of Columbia Nat'l Bank* v. *District of Columbia*, 121 U.S.App.D.C. 196, 198, 348 F.2d 808, 810 (D.C.Cir. 1965).

That said "employer conduct" alleged by Plaintiff qualify as "actionable" claims of discrimination under 2 U.S.C. 1311(a)(1)  is also mandated by the grammatical structure of the statute and the cross reference to Title VII therein.

"Within the meaning of section 703 of the Civil Rights Act of 1964(42 U.S.C. 2000e-2)" refers to the statutory basis of the claim:  "race, color, religion, sex, or national origin."   The respective prefatory term "all" and phrase "all personnel actions," stand independent of the statutory basis of the claim: "race, color, religion, sex, or national origin within the meaning of section 703 of the Civil Rights Act of 1964(42 U.S.C. 20000e-2)."

It is clear from the plain, customary and common sense use of said statutory language that by the term "all" Congress intended no limitation respecting the "employer conduct" made actionable for claims of discrimination under the CAA.

As the meaning of said statutory term is clear there is no need of recourse to

the aids available in the process of construction: to the legislative history which is limited, to analogy, to practice and to the dictionary.

## F. DISCRIMINATION PURSUANT TO THE CAA AND TITLE VII

The "**basis**" of a claim of discrimination pursuant to 2 U.S.C. 1311(a)(1) of the CAA is the same "basis" of a claim of discrimination "within the meaning of section 703 of the Civil Rights Act of 1964(42 U.S. 2000e-2)(Title VII): race, color, religion, sex or national origin." Discrimination based on weight is not actionable under either statute. .

The "**framework**" for proving a claim of discrimination based on race, color, religion, sex or national origin pursuant to 2 U.S.C. 1311(a)(1) of the CAA is the same "framework" for proving a claim of discrimination based on race, color, religion, sex or national origin pursuant to Title VII. The Board of Directors of the Office of Compliance, the "Board," applies the Title VII burden-shifting scheme established by the Courts in *McDonnell Douglas Corp.* v. *Green*, 411 U.S. 792 (1973), as refined in *St. Mary's Honor Ctr.* v. *Hicks*, 509 U.S. 502 (1993), *Texas Dep't. of Cmty. Affairs* v. *Burdine*, 450 U.S. 248 (1981), and *Reeves* v. *Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) for determining claims of discrimination brought pursuant to 2 U.S.C. 1311(a)(1) of the Congressional Accountability Act. <u>See</u> *Culver* v. *Office Supply Service, Office of the Chief*

40

*Administrative Officer, United States House of Representatives*, Case No. 96-AC-55(AG, CV, FM)(April, 1998); *Gage* v. *Office of the Architect of the Capitol*, Case No. 00-AC-21(CV)(November, 2001); *Rollins* v. *Office of the Clerk of the House of Representatives*, Case No. 03-HS-105(CV,AG) (December, 2004); *Britton* and *Solomon, supra*; and *Duncan* v. *Office of the Architect of the Capitol*, Case No. 02-AC-59(RP)(September, 2006).

The "**employer conduct**" made "actionable" for a claim of discrimination under the CAA is expressed in the statutory language of 2 U.S.C. 1311(a)(1): "All personnel actions..."

The "employer conduct" made "actionable" for a claim of discrimination under Title VII is expressed in the statutory language of 42 U.S.C. 2000e-2:

"(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment, or otherwise to discriminate against, any individual because of his race, color, religion, sex, or national origin, or to classify or refer for employment any individual on the basis of his race, color, religion, sex, or national origin." 42 U.S.C. 2000e-2 .

By statutory language distinct from the statutory language of Title VII and 42 U.S.C. 2000e-16, Congress in 2 U.S.C. 1311(a)(1), provided an encompassing, all inclusive statutory category for the "employer conduct" made actionable on a claim

41

of discrimination respecting Title VII, the Americans With Disability Act, the Rehabilitation Act and the Age in Discrimination Act: "all."

The Congressional intent to preclude any limiting of the "employer conduct" made actionable for claims of discrimination under the CAA based on race, color, religion, sex, or national origin is refuted by using the word "all" in the plain statutory language of 2 U.S.C. 1311(a)(1) of the CAA.

The use of said plain statutory language indicates the necessary Congressional intent to reject and preclude the use of the limiting language of Title VII and substantive case law precedent established thereunder.

This difference in the statutory language respecting discrimination between the CAA and Title VII is relevant and material as it constrains the application of the use of the narrower construction of Title VII.

More importantly it recognizes implicitly the separation of powers intended by Congress in enacting a statute significantly different from Title VII

## G.   RETALIATION PURSUANT TO THE CAA AND TITLE VII

The "**basis**" of a claim of retaliation pursuant to 2 U.S.C. 1317(a) of the CAA intimidation, reprisal against, or otherwise discrimination because the covered employee has opposed any practice made unlawful by this chapter, or because the covered employee has initiated proceedings, made a charge, or testified, assisted or

participated in any manner in a hearing or other proceeding under this chapter.  See 2 U.S.C. 1317(a) of the CAA and *Britton* and *Solomon, supra*."

The "**basis**" of a claim of retaliation pursuant to Title VII is "(a) Discrimination for making charges, testifying, assisting, or participation in enforcement proceedings. It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment,..., because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

The "**framework**" for proving a claim under the CAA is an employee's opposition or participation; intimidation, reprisal and/or otherwise discrimination taken against the employee; an unlawful retaliatory adverse employment action reasonably likely to deter opposition and/or participation in future protected activities under the CAA;  and, a causal connection between the employee's opposition and/or participation and the  intimidation, reprisal and/or otherwise discrimination taken against the employee;

The "**framework**" for proving a claim under Title VII is an employee's opposition or participation; a material adverse action; and, a causal connection between the employee's opposition and/or participation and the material adverse

action taken against the employee.

The "**employer conduct**" that is made "actionable" for a claim of retaliation pursuant to 2 U.S.C. 1317(a) of the CAA,  whether based on discrimination or retaliation, and irrespective of which one of the eleven statutes provides the predicate for the claim of retaliation is "any adverse treatment that is based on a retaliatory motive and is reasonably likely to deter a charging party or others from engaging in protected activity."   <u>See</u> *Britton* and *Solomon, supra.*

The "**employer conduct**" that is made "actionable" on a claim of  retaliation pursuant to Title VII in the instant Circuit is set forth in *Baird* v. *Gotbaum*, 662 F.3d 1246, 1248(D.C.Cir. 2011): "'an adverse employment action' is `a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant in benefits.'"

* * * * * * *

The Congressional intent to preclude any limiting of the "employer conduct" made actionable for claims of retaliation under the CAA based on "opposition" and/or "participation" was determined by the Board in *Britton, supra,*  pursuant to the use of "intimidation" and "otherwise discriminate" in the expressed statutory language of 2 U.S.C. 1317(a) of the CAA.

44

In *Britton, supra,* and reiterated thereafter in *Solomon, supra,* the Board, the entity authorized to administer and execute the CAA, consistent with the intent of Congress, rejected the "employer conduct" standard of Title VII based on the use of "intimidation" in the expressed statutory language of 2 U.S.C. 1317(a) of the CAA, determined that Congress intended.

The Board determined, by reference to "intimidation" in the text of the statute, that the "employer conduct" prohibited by 2 U.S.C. 1317(a) of the CAA was broader than the retaliation provisions in Title VII, 42 U.S.C. 2000e-3, the retaliation provisions in the ADEA, 29 U.S.C. 623(d), and the retaliation provisions in the ADA, 42 U.S.C. 12203(a). These statutory provisions do not refer to intimidation, and only prohibit "discrimination" because an employee has engaged in certain protected activities.

The Board further determined that 2 U.S.C. 1317(a) was also broader than the retaliation provisions in the Fair Labor Standards Act ("FLSA"), 29 U.S.C. 215(a)(3), which makes it unlawful for an employer to "discharge or in any other manner discriminate" against any employee who has engaged in protected activities; the Employee Polygraph Protection Act ("EPPA"), 29 U.S.C. 2002(4), which makes it unlawful to "discharge, discipline, discriminate against in any manner, or deny employment or promotion to, or threaten to take any such action"; USERRA, 38

45

U.S.C. 4311(b), which provides that an employer may not "discriminate in employment against or take any adverse employment action against any person because such person has engaged in protected activities"; and the OSH Act, 29 U.S.C. 660), which provides that "no person shall discharge or in any manner discriminate" against an employee because the employee has engaged in protected activities.

The Board "believe[d]" and reasoned that Congress' use of the term "intimidate" in addition to reprisal and discriminate in 2 U.S.C. 1317(a) evidences the intent to more broadly define the type of employer conduct proscribed. The Board further noted that the interference provisions in Section 503(b) of the ADA contain a reference to "intimidation" as well as references to coercion, threats and interference. 42 U.S.C. 12203 (b) and that such interference clauses have generally been construed more broadly than the adverse action cases under Title VII might suggest citing *Brown* v. *City of Tucson*, 336 F.3d 1181, 1191-92 (9th Cir. 2003).

The Board therefore declined to adopt the narrow definition of "employer conduct" under Title VII for 2 U.S.C. 1317(a) retaliation cases and defined "employer conduct" nee "adverse action" as "any adverse treatment that is based on a retaliatory motive and is reasonably likely to deter a charging party or others from engaging in protected activity" .

There is no question that Congress was aware of the analogy between Title VII

and CAA. Congress, by the difference in statutory language, rejected the substantive standards for discrimination and retaliation that prevail in private and public sector Title VII law and based on the practical distinctions between the substantive law of the CAA and Title VII and the practical distinctions between the CAA comprehensive statutory scheme and Title VII's statutory scheme, it is clear that the CAA was not drafted as a mirror image to the comparable legislation governing private and public sector Title VII law.

Accordingly, the CAA, on its face, was neither enacted as a supplement to Title VII nor enacted to supercede the Title VII scheme and the differences in said statutory schemes implicitly recognizes the Congressional intent to adhere to the separation of powers principle.

The case law precedent developed under Title VII was available to Congress when it enacted the CAA and rejected the otherwise qualifying and restrictive language contained in 42 U.S.C. 2000e-2, 42 U.S.C. 2000e-3, and 42 U.S.C. 2000e-16.

In rejecting the qualifying and otherwise restrictive language contained in 42 U.S.C. 2000e-2, 42 U.S.C. 2000e-3, and 42 U.S.C. 2000e-16, Congress rejected the non-statutory case law precedent established by the judiciary for Title VII.

## H. THE EFFECT OF THE UNIFORM REMEDY FOR RETALIATION

47

Moreover, the one uniform remedy for claims of retaliation mandates a statutory construction which includes the "employer conduct" recognized by the substantive law of the workplace law made applicable under the CAA pursuant to which a claim of retaliation is based. An otherwise reading of the text that would effectively render the word "intimidation" insignificant in 2 U.S.C. 1317(a), if not wholly superfluous; and, additionally nullify an entire section of the text and excise a portion of the text in violation of paramount rules of statutory construction, to wit: 2 U.S.C. 1351 and the application of Chapter 71 of Title5 of the United States Code relating to Federal service labor-management relations.

The Court in *Duncan* v. *Walker*, 533 U.S. 167(2001), recognized that   "A statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant."

The Court earlier stated that "[I]t is our duty `to give effect, if possible, to every clause and word of a statue.;" *United States* v. *Menasche*, 348 U.S. 528, 538-539, 75 S.Ct. 513, 99 L.Ed. 615(1955)(quoting *Montclair* v. *Ramsdell*, 107 U.S. 2147, 1521, 2 S.Ct. 391, 27 L.Ed. 431(1883)); see also *Williams* v. *Taylor*, 529 U.S. 362, 404, 120 S.Ct. 1495, 146 L.Ed.2d 389(2000)(describing this rule as a "cardinal principle of statutory construction."

The Court in *Dunn* v. *Commodity Futures Trading Comm'n*, 519 U.S. 465,

48

472, 117 S.Ct. 913, 137 L.Ed.2d 93(1997)(recall[ed] the "doctrine that legislative enactments should not be construed to render their provisions mere surplusage").

The Court in *Pilot Life Ins. Co.* v. *Dedeaux*, 481 U.S. 41, 51, 107 S.Ct. 1549, 1554-55)(1987) noted that a statute must be read as a whole with due regard for its object, purposes and underlying policy.

The Court further noted that limiting language in a statute to terms of a different statute, violates the cardinal principal of statutory construction that Congress does not insert superfluous, void, or insignificant words into its statute. *TRW Inc.* v. *Anderws*, 534 U.S. 19, 31, 122 S.Ct. 441, 151 L.Ed.2d 151(2001) and *United States* v. *Menasche*, 348 U.S. 528, 538-39, 75 S.Ct. 513, 99 L.Ed. 615(11955)("It is our duty `to give effect, if possible to every clause and word of a statute'..."(quoting *Montclair* v. *Ramsdell*, 107 U.S. 147, 152, 2 S.Ct. 391(1883).

In accordance with this argument, Plaintiff contends that the CAA retaliation statute must, at a minimum hold unlawful the "employer conduct" held to constitute unlawful activity  under the broad breadth of the National Labor Relations Act, "NLRA,"  which prohibits employers from engaging in any conduct, including discharges, which may "otherwise discriminate against an employee" which has been liberally construed to include numerous discriminatory actions that fall short of an actual discharge as will be shown below.  Section 8(a)(3), 29 U.S.C. 158(a)(3)

In *Microimage Display Div. of Xidex Corp.*, 297 N.L.R.B. 110, 111, enforced, 924 F.2d 245 (D.C. Cir. 1991) the National Labor Relations Board, NLRB Board, rejected the administrative law judge's finding that single-day transfer was *de minimis* and found that, viewed in context of other violations, the single-day transfer was a "substantial violation. In *Edgar L. Landen T/A Speed Mail Serv.*, 251 N.L.R.B. 476, 477 (1980) the NLRB Board rejected the administrative law judge's finding that changing timing of paycheck distribution was *de minimis* and found the action to have violated section 8(a)(3)), 29 U.S.C. 158(a)(3).

The Board found unlawful discrimination when the employer issued disciplinary warnings in violation of section 8(a)(3): *Zimmerman Plumbing & Heating Co.*, 325 N.L.R.B. No.5, 1997 WL 728268, at *26, *30 (Nov. 8, 1997); *Vencor Hosp.-L.A.*, 324 N.L.R.B. No. 35, 1997 WL 471299, at *27-30 (Aug. 13, 1997) *Feldkamp Enters., Inc.*, 323 N.L.R.B. No. 206, 1997 WL 394448, at *51-54 (July 11, 1997). In *Feldkamp Enterprises*, the administrative law judge rejected the employer's argument that the incident was "too trivial," finding "nothing trivial about these warnings or the discriminatory motives propelling them."

In *House Calls, Inc.*, 304 N.L.R.B. 311, 312-13 (1991) and *Advertiser's Mfg. Co.*, 280 N.L.R.B. 1185, 1190-91 (1986), enforced, 823 F.2d 1086 (7th Cir. 1987) the NLRB Board found the employer's removal of telephone privileges to be unlawful

discrimination.

In *Goodman Inv. Co.*, 292 N.L.R.B. 340, 340, 349-50 (1989) the NLRB Board found the elimination of an employee's free parking space to be unlawful discrimination.

In *Mid-South Bottling Co.*, 287 N.L.R.B. 1333, 1342-43 (1988), enforced, 876 F.2d 458 (5th Cir. 1989) the NLRB Board found an employer's refusal to allow an employee to borrow a dolly for personal use to be unlawful discrimination.

In *Sands Motel*, 280 N.L.R.B. 132, 141 (1986) the NLRB Board found an employer's elimination of paycheck-cashing privileges to be unlawful discrimination.

In *F & R Meat Co.*, 296 N.L.R.B. 759, 767 (1989) the NLRB Board found an employer's behavior to be unlawful discrimination when he stopped providing free coffee by removal of a coffee pot.

The NLRB Board has determined minor disciplinary and informal counseling to be actionable where an employer has a progressive disciplinary system and "writes up" a warning and places it in the employee's personnel file and the employee will suffer no consequences now, but if he gets additional written warnings within a certain time period, additional penalties may be imposed. Under the NLRA the employee is able to challenge the written warning even if it does not affect any other employment conditions. So long as the discipline is part of a disciplinary system or

51

the discipline has a chance of affecting the employee's compensation or tenure, it is a term, condition, or privilege of employment. See *Zimmerman, Vencor Hospital and Feldkamp Enters, Inc, supra.*

If the action is merely a form of informal counseling, without potential future consequences, it generally will not represent a term, condition or privilege of employment under Section 8(a)(3) of the NLRA.

Oliver Wendell Holmes, Jr. wrote in The Path of the Law, 10 Harv.L.Rev. 457, 459(1897) that "[I]f you want to know the law and nothing else, you must look at it as a bad man, who cares only for the material consequences which such knowledge enables him to predict....."

Defendant can well predict the line-drawing activity it can unlawfully engage in and avoid accountability under the CAA pursuant to the application in error of the standards of Title VII to said complaints brought pursuant to the CAA and not Title VII.

The court has said that "a statute is not *in pari materia* if its scope and aim are distinct or where a legislative design to depart from the general purpose or policy of previous enactments may be apparent.'" *Latimer* v. *Sears Roebuck & Co.*, 285 F.2d 152, 157 (5th Cir. 1960). See also *Williamson* v. *Lee Optical Co.*, 348 U.S. 483, 489, 99 L. Ed. 563, 75 S. Ct. 461 (1955); *Roschen* v. *Ward*, 279 U.S. 337, 339, 73 L. Ed.

722, 49 S. Ct. 336 (1928); *Ramapo Bank* v. *Camp*, 425 F.2d 333, 346 (3d Cir.), cert.

denied, 400 U.S. 828, 27 L. Ed. 2d 58, 91 S. Ct. 57 (1970).

"The purpose[s] of Congress is a dominant factor in the determination of a

statute's meaning,...and where a choice may be made between two possible

constructions, that construction should be chosen which would serve to effectuate

Congressional purpose rather than defeat it." *Stella* v. *Graham-Paige Motors Corp.*,

104 F. Supp. 957, 959 (D.N.Y. 1952); *Hudson Distributors* v. *Eli Lilly*, 377 U.S. 386,

391-92, 12 L. Ed. 2d 394, 84 S. Ct. 1273 (1964); *Commissioner* v. *Bilder*, 369 U.S.

499, 503, 8 L. Ed. 2d 65, 82 S. Ct. 881 (1962); *NLRB* v. *Lion Oil Co., supra* note 53,

352 U.S. at 290-92; *United States* v. *City & County of San Francisco, supra* note 53,

310 U.S. at 26; *United States* v. *Guaranty Trust Co.*, 280 U.S. 478, 485, 74 L. Ed.

556, 50 S. Ct. 212 (1930); *Fort Smith & Western R.R. Co.* v. *Mills*, 253 U.S. 206, 208,

64 L. Ed. 862, 40 S. Ct. 526 (1920); *Gibson* v. *Missouri Pac. R.R. Co.*, 441 F.2d 784,

787 (5th Cir.), *cert. denied*, 404 U.S. 855, 30 L. Ed. 2d 96, 92 S. Ct. 102 (1971);

*Akins* v. *United States*, 194 Ct. Cl. 477, 439 F.2d 175, 177 (1971).

Plaintiff submits, when all factors are placed on the scale, the balance falls in

the favor of the Plaintiff: the CAA is not *in pari materia* with Title VII; the broad

CAA standards respecting  "employer conduct" are to apply and the respective

Counts in the Complaint are viable claims of discrimination, viable claims of

retaliation based on "opposition," and viable claims of retaliation based on "participation in federally protected activities under the CAA," pursuant to 2 U.S.C. 1311(a)(1) and 2 U.S.C. 1317(a) of the Congressional Accountability Act, respectively.

## I. HOSTILE WORK ENVIRONMENT CLAIMS UNDER THE CAA

The Court dismissed Appellant's hostile work environment claims based on a failure to raise actionable claims pursuant to Title VII; a determination made in abnegation of the CAA law to be applied in the instant matter. See 2 U.S.C. 1311(a)(1), 2 U.S.C. 1317(a) and 2 U.S.C. 1361(f)(1) of the CAA.

The Board with respect to the hostile work environment claim in *Solomon*, *supra*, recognized the role of context and identified "context" as the "totality of circumstances" in addition to reaffirming the standard it had established for claims of retaliation in *Britton*.

The Board respecting the hostile work environment claims in *Solomon* referenced *Raniola* v. *Bratton*, 243 F.3d 610(2nd Cir. 2001), which relying on *Williams* v. *General Motors Corp.*, 187 F.3d 553 (6th Cir. 1999), held that, when considering the totality of the circumstances, "even where individual instances of...harassment do not on their own create a hostile environment, the accumulated effect of such incidents may result in a Title VII violation." *Raniola* v. *Bratton*,

*supra*, 243 F.3d at 6176, citing *Williams* v. *General Motors Corp.*, *supra*, 187 F.3d at 563.

The Board in *Solomon, supra,* noted that the *Raniola* court supported its decision by referring to and relying in part on language from *Andrews* v. *City of Philadelphia,* 895 F.2d 1469(3d Cir. 19909): "A play cannot be understood on the basis of some of its scenes but only on its entire performance, and similarly, a discrimination analysis must concentrate not on individual incidents, but on the overall scenario....What may appear to be a legitimate justification for a single incident of alleged harassment may look pretextual when viewed in the context of several other related incidents." *Raniola*, 243 F.3d at 62, citing *Andrews* v. *City of Philadelphia*, 895 F.2d at 1484.

The Board in *Solomon, supra*, citing *National Railroad Passenger Corporation* v. *Morgan*, 536 U.S. 101, 116(2002), "*Morgan,*" noted that an analysis a hostile work environment claim based on the "cumulative affect of the individual acts" required an analysis of the frequency and severity of the adverse treatment, including whether the adverse treatment was physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfered with a plaintiff's work performance. The Court further held in *Morgan, id.* that

"[H]ostile work environment claims are different in kind from discrete acts. Because their very nature involves repeated conduct, the `unlawful employment

55

practice,' ..., cannot be said to occur on any particular day. It occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own. See *Harris* v. *Forklift Systems, Inc.,* 510 U. S. 17, 21."

As discussed in *Britton, supra*, the inclusion of "intimidation" in the statutory language of retaliation in 2 U.S.C. 1317(a) of the CAA reveals the Congressional policy to establish a broader standard of retaliation than the "material adverse action" standard set forth in Title VII as established by the Courts.

The CAA statutory provision prohibits any adverse treatment that is based on a retaliatory motive and is reasonably likely to deter the charging party or others from engaging in protected activity.

Retaliatory hostile work environment claims based on "opposition" and/or participation do not require, even under Title VII, a "material adverse action." There is no requirement that the adverse action materially affect the terms, conditions, or privileges of employment.

In the instant matter a hostile work environment was alleged in *Swann I* and *Swann II* resulting from the cumulative effect of Appellant's daily, on going and unlawful discriminatory inability to access and use of the "separate and unequal" locker room and personal "intimidation" resulting to Appellant from the resentment and antagonism of Appellant's male co-workers emanating from Appellant's disruption of the formerly exclusively male Electric Shop and locker room and

56

Appellee's "intimidation" of Appellant by interfering with, restraining and denying her the exercise of rights provided by statute and regulation pursuant to Appellee's manipulation and foreclosure of the administrative processes provided Appellant to remedy the unlawful gender discrimination and retaliation experienced by the Appellant to enable Appellee avoid its responsibilities and accountability under the CAA.

Where, as here, the issue in part is the intangible adverse treatment reflected in the proven antagonism and ostracization of Appellant by her male co-workers based on her gender and complaints to the EEO/CP , the materiality of the adverse treatment alleged supporting the hostile work environment claims is not an issue.

The Court has made clear, that retaliatory acts based on "opposition" and/or "participation" do not have to meet such a standard even under Title VII, as the terms and conditions of employment include the intangible work environment reflected in the resentment and antagonism of Appellant's male co-workers and Appellee management. <u>See</u> *Meritor Savings Bank* v. *Vinson*, 477 U.S. 57, 64-67(1986).

Where, as here, the issue in part is the adverse treatment resulting from Appellee's "intimidation" of Appellant reflected in Appellee's interfering with, restraining and denying Appellant the exercise of rights provided by statute and regulation pursuant to Appellee's manipulation and foreclosure of administrative

57

processes to remedy the unlawful gender discrimination and retaliation, the adverse treatment is tangible and material.

Said intimidation is evidenced by Appellee's manipulation and foreclosure thereby of the Appellant's rights under the Grievance regulations.

Not only did the Court inaccurately determine Appellee followed the Grievance procedures but in violation of Rule 56 of the FRCP and the requirement that all factual allegations in the complaint are viewed as true and in the light most favorable to the appellant, the Court inaccurately determined that Appellant's failure to appeal the denial of her Grievance within the required ten days was further reason to dismiss her claim, when if fact, Appellant did not appeal to the Architect because she could not dispute the investigations improperly conducted in violation of said Chapter 771 Grievance policy. See App. 398-410 and page 27, Lines 18-021 and Page 28, L-16-24 of the Status Hearing and Order, App, 525-526.

In the instant matter, the EEOC investigator, noting the antagonism towards and ostracizing of the Appellant by her male co-workers and management resulting from her communications to the EEO/CP and Office of Compliance respecting discrimination and retaliation, corroborated the pattern of gender discrimination and retaliation experienced by Appellant; opposition to gender discrimination and retaliation made unlawful by 2 U.S.C. 1311(a)(1) and 2 U.S.C. 1317(a) of the CAA.

Significantly, said report of the EEO/CP investigator, was contrary to former EEO/CP Director Bailey's tarring Appellant as a "gossip," solidifying a discriminatory gender stereotype, absent evidence in support thereof. See Plaintiff's Exhibit 3, Pages 47 - 52 and DDR 281-286 and Ms.Bailey's hand written notes on Page 5 of the draft investigation report, App. 139–144.

In the instant matter the respective violations by Appellee of the EEO/CP process pursuant to her respective complaints submitted therein, the Chapter 771 Grievance process, and the Section 2.03(m) process engaged in by Appellant and Appellee pursuant to the Procedural Rules under the CAA, reveal a systemic pattern of gender discrimination and retaliation engaged in by Appellee to deter communication by Appellant submitted in "opposition" to the gender discrimination and retaliation made unlawful by the CAA and to deter "participation" by Appellant in federally protected activities under the CAA to enforce the gender discrimination and retaliation prohibitions of the CAA. App. 398-410 and 436-440.

Notably, the failure by the Court to address said hostile work environment claims based on "opposition" and "retaliation" deprives Appellant thereby of a reasoned decision based on the "totality of circumstances" standard and context required by *Solomon*, *supra*. Appellant explicitly and implicitly communicated to Appellee a good faith belief that its activities constituted unlawful gender

59

discrimination and retaliation pursuant to her respective EEO/CP complaints, her Chapter 771 Grievance, her response to the Proposal to Reprimand and her participation in the Section 2.03(m) process – all "opposition" to gender discrimination and retaliation under the CAA.

## CONCLUSION

The Court alludes to but does not address the retaliation claims based on "opposition" set forth in Counts X-XVIII of *Swann II* depriving Appellant thereby of a reasoned decision with respect to said claims.

The Court, in response to questioning by Appellee, reaffirmed it was bound to "the materially adverse actions within the meaning of *Burlington* and the related Title VII cases" in the instant Circuit; decisions clearly not based on the CAA and contrary to the decisions of the Board rendered pursuant thereto. See Page 39, Lines 11-13 of the Status Hearing and dismissal Order of the Court.

The Court, with respect to Title VII, has said that "[W]hether a particular adverse action satisfies the materiality threshold is generally a jury question, with our role limited to determining whether, viewing the evidence in the light most favorable to the plaintiff, a reasonable jury could find the action materially adverse." See *Pardo–Kronemann* v. *Donovan*, 601 F.3d 599, 607 (D.C.Cir.2010) (explaining that it was a jury question whether the particular reassignment of duties constitutes an

60

adverse action.)

Moreover, with respect to Title VII, the Court has further noted that "[W]hether an action is 'materially adverse' is determined by whether it holds a deterrent prospect of harm, and not by whether the harm comes to pass or whether any effects are felt in the present." See *Rattigan* v. *Holder*, 604 F.Supp.2d 33, 52( D.C.D.C. 2011).

Appellant submits, viewing the evidence in the light most favorable to the Appellant, a reasonable jury could find the allegations set forth in *Swann I* and *Swann II* were materially adverse actions both under Title VII and the CAA, *i.e.*, the cumulative effect of Appellant's daily, on going and unlawful discriminatory access to and use of the "separate and unequal" locker room and the tension and personal "intimidation" resulting to Appellant from the resentment and antagonism of Appellant's male co-workers for her disrupting the formerly exclusive male only Electric Shop and locker room and from Appellee's "intimidation" of Appellant by its interfering with, restraining and denying Appellant the exercise of rights provided her by statute and regulation pursuant to Appellee's manipulation and foreclosure of the administrative processes provided Appellant to remedy the unlawful gender discrimination and retaliation and to avoid its responsibilities and accountability under the CAA and/or Title VII were adverse actions.

61

WHEREFORE, appellant respectfully requests a reversal of the decision of the District Court, and the matter be remanded to the District Court for further proceedings consistent with this decision.

Respectfully submitted,

Jeffrey H. Leib
Attorney for Petitioner
5104 34th Street, N.W.
Washington, D. C. 20008
202 362 - 0682

February 3, 2014

## CERTIFICATE OF WORD COUNT

I hereby certify that the foregoing Brief for Petitioner contains 13, 964 words, including footnotes and citations, and excluding the cover, the certificate required by Circuit Rule 28(a)(1), the table of contents, the table of authorities, the glossary, the certificate of service, and any addenda. Counsel has relied on the word count reported by counsel's word processing system for the relevant sections of the brief. This brief is proportionally spaced in 14 point Times Roman font.

## CERTIFICATE OF SERVICE

I hereby certify that on this 3rd day of February, 2014, a copy of the foregoing Brief of Appellant Audrey Swann was served on Defendant via ECF.

/s/
Jeffrey H. Leib